**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1840-20

APERION ENTERPRISES, INC.,

     Plaintiff-Appellant,

v.

GOTHAM BEVERAGE, INC.,
GEORGE MATTHEWS,
HARAMBOS TSOTSOS,
HELEN MATTHEWS,
JOANNE MATTHEWS and
STEVEN MATTHEWS,

     Defendants-Respondents.

_____

Submitted January 20, 2022 – Decided August 22, 2022

Before Judges Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5307-19.

O'Brien Thornton LLC, attorneys for appellant (Merrill M. O'Brien, on the briefs).

The Levine Law Firm, LLC, attorneys for respondents (Kenneth T. Gallo, on the brief).

PER CURIAM

In this commercial landlord-tenant dispute, plaintiff Aperion Enterprises, Inc. appeals a February 2, 2021 judgment of the Law Division dismissing its claims for underpayment of rent under a lease agreement with defendant Gotham Beverage, Inc. The judgment also dismissed defendant's counterclaim for overpayments of rent. We conclude the judge impermissibly modified the terms of the contract between the parties and thereby deprived plaintiff of rent to which it was entitled under the clear rent escalation provision in the lease. Accordingly, we reverse.

Aperion owns and leases the land and building located at 39-10 Broadway, Fair Lawn, N.J. (the property). On March 27, 1998, plaintiff entered into a thirty-five-year lease with non-party Quo Non Ascendet, Inc. (QNA). In consideration of QNA's $2,000,000 capital investment spent constructing a diner on the premises, plaintiff agreed to a below-market rent for the first fifteen years of the lease term, with a fixed monthly rent subject to a $150 per month rent increase each year for the first fifteen years. These terms are explicitly set forth in Lease Rider ONE B and are not in dispute. Lease Rider ONE C provided that in the fifteenth year of the lease, the parties would work to agree upon a new base rent, representing the fair market value, to be effective in the sixteenth year.

On November 13, 2007, defendant assumed the lease. During the fifteenth year of the lease – April 1, 2012 to March 31, 2013 – the parties could not agree, as provided for in the lease and rider, on which appraisers would assess fair market rent. The parties therefore agreed to submit the issue to binding arbitration through the American Arbitration Association (AAA). The sole issue submitted to AAA for resolution was the fair market rental value of the demised premises in March 2013. In a May 31, 2017 award, the arbitrator determined that "[t]he fair market value of the first floor of the Premises as of March 2013 is $25.50 [per square foot] (PSF) for 5146 square feet[,]" and "[t]he fair market value of the basement of the Premises as of March 2013 is $9.00 PSF for 3339 square feet." Based on the arbitrator's calculations, the March 2013 fair market annual rent for the property was $161,274. Defendant's pre-arbitration annual rent was $82,200.

Arbitration took four years to complete. During that time, defendant continued to pay below-market rent over plaintiff's objection. After the arbitration award, plaintiff sent defendant a calculation of the underpayment, which he reached by applying cumulative yearly increases to the base rent starting in 2013. Defendant paid the requested amount with funds that cleared on June 23, 2017. Thereafter, defendant continued to pay, and plaintiff

A-1840-20

continued to accept, rent based on the calculations used to determine underpayment for the years 2014-2017.

When calculating the rent increase that was scheduled to begin April 1, 2019, plaintiff realized it had made an alleged mistake in the retroactive calculation of the additional rent owed for 2014-2017. On May 2, 2019, plaintiff's counsel sent a letter informing defendant of the mistake and seeking an additional $41,217. Defendant disputed plaintiff's application of the rent escalation formula in Lease Rider ONE D, and refused to pay the additional rent.

On July 18, 2018, plaintiff filed a two-count complaint. Count one alleged a breach of the lease by failure to pay the full amount of rent due under its terms. Count two alleged that the failure to pay the rent also breached the five personal guarantees of the rent and that the guarantors each breached the guarantees by failing to provide a certification that the guaranty was unmodified and in full force and effect.[1]

---

[1] The trial judge did not address whether there was a breach of the personal guarantees. As defendants noted, however, a condition precedent for a breach of the guarantees was not shown, and thus the claims could not succeed as a matter of law. Specifically, each guarantee stated:

> Guarantor agrees that it will, at any time and from time to time, within five (5) days following written request by Landlord and without charge therefor, execute,

A-1840-20

On August 26, 2019, defendant and defendant-guarantors filed an answer and three-count counterclaim alleging breach of the lease (count one), breach of the lease's covenant of good faith and fair dealing (count two), and equitable fraud (count three). As part of its counterclaim, defendant sought return of $1,969.21 it claims to have overpaid in retroactive rent for 2014-2018.[2]

A February 8, 2021 bench trial occurred via Zoom and consisted of the testimony of two witnesses. The first witness was George Konstantinitis, the President of Aperion, who testified for the plaintiff, and the second was George Matthews, the President and co-founder of Gotham, who testified for defendant.

---

> acknowledge and deliver to Landlord a statement certifying that this Guaranty is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating such modification). Guarantor agrees that such certificates may be relied upon by anyone holding or proposing to acquire any interest in the building (of which the demised premises is a part) from or through Landlord or by any mortgagee or prospective mortgagee of said building or any interest therein.

Because plaintiff produced no evidence it made the required written request, we conclude the breach-of-guarantee claim must fail notwithstanding the trial court's silence on the issue.

[2] Defendant did not file a cross-appeal of the dismissal of its counterclaims and we deem the issues waived.

A-1840-20

In his testimony, Konstantinitis explained that Lease Rider ONE D, the primary subject of this appeal, provides that the base rent for each year beginning in 2014 and concluding in 2022 would be calculated using the Consumer Price Index[3] (CPI) for New York and Northeastern New Jersey for "urban wage earners and clerical workers." Specifically, Lease Rider ONE D provides:

> D. The rent thereafter [after February 28, 2014] shall be computed, for years 2014 through 2022, by multiplying that base rent by a factor determined by comparing the [CPI] for New York – Northeastern New Jersey as published by the U.S. Department of Labor, Bureau of Labor Statistics (BLS) for urban wage earners and clerical workers, or if not available, any similar statistical cost of living study customarily utilized to determine the [CPI] shall be used, as noted in F. below, utilizing that index for January of the pre-increase year, with January of the year of increase and converting that factor to a percentage, said percentage to be multiplied by a new base rent, and the resultant to be the increase for the then current year, commencing March 1, 2014 and, in the same manner, annually through the [twenty-fifth] year of the term. The rent so computed shall not be less than the monthly rent for the prior year, nor more than an increase of four percent (4%) over the prior year's rent.

---

[3] The Consumer Price Index is a measure of the average change over time in the prices paid by urban consumers for a market basket of consumer goods and services. Indexes are available for the U.S. and various geographic areas. Average price data for select utility, automotive fuel, and food items are also available. Consumer Price Index, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/cpi/.

[i.e.] If the rent for the year 2013 to 2014 is $6850, and the CPI for January 2012 is 156.3, and the[] CPI for January 2013 is 158.2, the difference of 1.9 shall be deemed as a percentage, and the prior year's rent ($6850 x 12 = $82,200) shall be multiplied by 1.9% (=$1561.80 ÷ 12 = 130.15) so that the monthly rent commencing on March 1, 2014 will[] be $6980.15 per month, through February 28, 2015.

The same computation shall be made annually, through the [twenty-fifth] year of the term, to arrive at a monthly rent.

Simply put, the CPI for January of the pre-increase year is deducted from the CPI for the then current year, commencing March 1, 2014 and the resulting difference is deemed the percentage rent increase for that year, capped at four percent. Although it is unclear precisely how plaintiff misapplied the formula, no one seriously disputes that he did not apply the plain language of the lease.[4]

---

[4] Defendant's theory at trial was that the lease formula was not the "standard in the industry." It preferred a "sample" formula provided online by the (BLS) in response to a frequently asked question. Defendant's "preference," however, is not evidence that the method agreed to in the lease is illegal or otherwise prohibited, nor was any competent evidence presented that the BLS suggestion is, in fact, standard in rent escalation contracts. To the contrary, the posting itself notes it merely provides factors to consider in developing an escalation contract, many or most of which were considered in the subject lease. Further, the agency posting states it "can neither develop certain wording for contracts, nor mediate legal or interpretive disputes" that arise between parties to an escalation contract.

A-1840-20

At the conclusion of the bench trial, the judge delivered an oral opinion finding that plaintiff calculated the underpayment of the rent based initially on the March 2013 fair market value and then "offered" that rate to defendant, which was accepted. The judge reasoned that plaintiff's claim that it made a mistake

> is of no moment because of the fact that the landlord themselves knew that there was . . . a rent dispute. Submitted it to arbitration. And then, pursuant to that arbitration award, calculated what the rent should be. Offered that rent to the tenant. And the tenant accepted that . . . from the landlord as the proper formulation for CPI increases.
>
> That is the undisputed testimony. The concept that they could now relate back to a lease that this tenant had signed when there, in fact, was a new offer and acceptance made by the landlord which the tenant accepted based on a CPI formula which seems clear and certain, and which is, in fact, what the tenant still says should be the formula that is in place, is uncontradicted as to being what the parties had agreed to. That was the meeting of the minds that occurred after the Triple A arbitration.
>
> And the CPI relationship to the rent increases again seems to be what was offered by the landlord and accepted by the tenant, and is still being maintained by the tenant as the proper calculation. And the tenant has put forth D-6 which the Court finds again coincides with the landlord's calculation.
>
> Now, again, back to offer and acceptance, while D-6 may show a little bit less than what the landlord

8

promulgated, that is what the tenant agreed would be the new rent. . . . The landlord, therefore, has not proved that there has been a breach of the lease, and is, therefore, not entitled to legal fees nor any rent increases, other than what is promulgated under the appropriate CPI increase that he offered and that the defendant accepted.

On February 22, 2021, the judge entered final judgment and dismissed the plaintiff's claims and the defendant's counterclaims in full with prejudice. The judge also ordered "that all past rent increases from March 1, 2014 to present and all future rent increases, other than base rent increases pursuant to Section [ONE] E of the Rider to Lease, shall be made in accordance with the standard CPI escalation calculation" subject to the four-percent cap provided in the lease.

On appeal, plaintiff presents the following arguments for our consideration:

POINT I

THIS COURT SHOULD REVERSE THE COURT BELOW AND ENFORCE THE LEASE AS WRITTEN BECAUSE THE TRIAL COURT'S CONCLUSION THAT THE PARTIES ENTERED INTO A NEW AGREEMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE. (No party raised the issue that they had signed or agreed to a new lease or lease modification. The Court below introduced it sua sponte . . . .).

A. The June 1, 2017 Calculation of Underpayment Was Not An Offer.

B.  There Was No Rent Dispute After Landlord Sent The First Mistaken Increase Calculation And Before Landlord Sent the Corrected Calculation.

C.  The Defendant's Counterclaim Disproves There Was a Meeting Of the Minds.

D.  There Was No Consideration To Support The Purported New Agreement.

POINT II

THIS COURT SHOULD REVERSE THE LOWER COURT AND ENFORCE THE LEASE AS WRITTEN BECAUSE THE LOWER COURT'S SUA SPONTE INSERTION OF AN OFFER AND ACCEPTANCE VIOLATED DUE PROCESS BECAUSE NO PARTY EVEN PLEADED OR OTHERWISE CLAIMED THE EXISTENCE OF A NEW AGREEMENT.  (No party raised the issue that they had signed or agreed to a new lease or a lease modification.  The Court below introduced it sua sponte . . . .).

POINT III

THE COURT BELOW COMITTED REVERSIBLE ERROR BECAUSE THE STATUTE OF FRAUDS RENDERS UNENFORCEABLE A MOIFICATION OF A LEASE FOR LONGER THAN THREE YEARS WHERE THE MODIFICATION IS NOT IN A SIGNED WRITING.  (No party raised the issue that they had signed or agreed to a lease modification.  The Court below introduced it sua sponte . . . .).

A-1840-20

POINT IV

THE COURT BELOW COMMITTED REVERSIBLE ERROR BY NOT ENFORCING THE LEASE AS WRITTEN. (The Court below acknowledged the annual rent increase method which is included in the Lease Rider Section D, Ex. JE1, but failed to enforce it . . . .).

A. The Rational Meaning Of The Actual Lease Rider ONE D Formula Is To Determine The Annual Percentage Rent Increase By Subtracting The CPI Number Of Two Successive Januarys And To Attach The Percentage Sign To That Resulting Difference So As To Provide The Landlord With Above-Market Rent Increases For Lease Years [sixteen to thirty five].

B. This Court Should Reverse The Lower Court And Enforce The Lease As Written Because The Trial Court's Modification Of The Lease Does Not Identify Which Month's CPI Is To Determine Annual Increases And Because The Calculation Methods "Presented At Trial" Were Not Sufficiently Clear to Comply with the Statute of Frauds.

POINT V

THE TRIAL COURT ERRED BY OMITTING A REQUIREMENT IN THE FINAL ORDER ENFORCING THE GUARANTEE WHICH REQUIRES THE GUARANTORS TO DELIVER A SIGNED REPRESENTATION THAT THE GUARANTEES REMAIN IN EFFECT AND INSTEAD SIMPLY TRUSTING DEFENDANTS TO PROVIDE THE LEGALLY REQUIRED DOCUMENT.

11

<u>POINT VI</u>

THE TRIAL COURT ERRED BY DENYING AN AWARD OF ATTORNEY'S FEES TO APERION, WHICH SHOULD BE REVERSED AND THE MATTER REMANDED TO THE TRIAL COURT FOR AN AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS TO APERION PURSUANT TO [<u>RULE</u>] 4:42-9.

Appellate review of a judge's decision following a bench trial is limited. Our standard of review requires that we uphold the trial judge's factual findings, provided they are "supported by adequate, substantial and credible evidence." <u>Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974). Thus, "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" <u>Seidman v. Clifton Sav. Bank, S.L.A.</u>, 205 N.J. 150, 169 (2011) (alteration in original) (quoting <u>In re Tr. Created By Agreement Dated Dec. 20, 1961</u>, 194 N.J. 276, 284 (2008)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>Manalapan Realty, L.P. v. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995). When construing contract terms, "unless the meaning is both unclear and dependent on conflicting

testimony," its interpretation is a matter of law subject to de novo review. Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009) (quoting Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001)).

"The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 492 (App. Div. 1991). Courts "should not torture the language of [contracts] to create ambiguity." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 643, 651 (App. Div. 1990)). Courts may not re-write a contract or grant a better deal than that for which the parties expressly bargained. See Solondz v. Kornmehl, 317 N.J. Super. 16, 21 (App. Div. 1998).

With these guiding principles in mind, we conclude that the judge erred in determining that there was a new offer and acceptance between the parties at the conclusion of arbitration which had the effect of altering the rent escalation formula.[5] At the time the parties resorted to arbitration, the sole dispute was the fair market rental of the property in March 2013. The arbitrator was not charged

---

[5] It is not clear that the issue of whether there was a new offer and acceptance or modification was properly before the judge. Neither party raised the issue directly in the pleadings or before the judge, who raised the issue sua sponte.

with determining the rent escalation formula, which was clearly spelled out in the lease.

Once the parties completed arbitration, plaintiff sent defendant a calculation of the amount of rent underpaid for the period of 2014-2017 which defendant proceeded to pay. Against the backdrop of defendant's preexisting obligation to pay rent established in the lease, the parties would have had to modify the contract at this juncture to implement a new rent escalation formula. "A proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify" and it "must be based upon new or additional consideration." Cnty. of Morris v. Fauver, 153 N.J. 80, 100 (1998). "Such modification can be proved by an explicit agreement to modify, or, . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." Id. at 99. Additionally, "[u]nilateral statements or actions made after an agreement has been reached or added to a completed agreement clearly do not serve to modify the original terms of a contract, especially where the other party does not have knowledge of the changes, because knowledge and assent are essential to an effective modification." Id. at 100. We discern nothing in the record that suggests the parties were consciously modifying the lease in a

A-1840-20

manner that made their intention to modify mutual and clear. We further observe that there was no additional consideration to support a modification.

Next, in the absence of a properly modified contract, the fact that plaintiff accepted less rent than it was entitled to under the lease is not evidence of an intention to modify. See id. at 101 (citing favorably the conclusion of the court in Walker v. Associated Dry Goods Corp., 231 Md. 168, 180 (1963), that "mere acceptance by [a plaintiff] for several years of payments in less amounts than they were entitled to under the lease does not evidence an intention on their part to modify the terms of the lease."). Additionally, lease paragraph twenty-two states: "[t]he various rights, . . . of the Landlord, expressed herein, are cumulative, and the failure of the Landlord to enforce strict performance by the Tenant of the . . . covenants of this lease, . . . shall not be construed or deemed to be a waiver . . . by the Landlord of any such conditions and covenants . . . ." As a result, by the clear terms of the parties' agreement, plaintiff is entitled to collect the rent plaintiff is owed, regardless of plaintiff's past performance.

Finally, because defendant owes plaintiff rent under the lease, plaintiff may be entitled to attorney's fees. Lease Rider Article Twelve provides that the costs and attorneys' fees incurred in this action will be paid by the losing party.

A-1840-20

The judge short-circuited an analysis of fees by improperly concluding that there had not been a breach of the lease.

To the extent we have not addressed them, any remaining contentions raised by the parties lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Reversed and remanded for entry of judgment in plaintiff's favor in accordance with the terms of the lease, and for a determination of attorney's fees. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1840-20